**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

GRIGSBY & ASSOCIATES, INC.          CIVIL ACTION NO. 14-2340

VERSUS                              JUDGE S. MAURICE HICKS, JR.

CITY OF SHREVEPORT, ET AL.          MAGISTRATE JUDGE HAYES

## MEMORANDUM RULING

Before the Court is Defendants, City of Shreveport ("the City"), Oliver Jenkins,

Michael Corbin, Jeff Everson (collectively referred to as "City Council Defendants"), Terri

Anderson-Scott, and Julie Glass's (collectively referred to as "City Attorney Defendants"),

Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss (Record Document 55)

Plaintiff, Grigsby & Associates, Inc.'s ("GAI"), allegations in its Complaint (Record

Document 1) of federal constitutional violations under 42 U.S.C. §§ 1981, 1983, and 1985

and state law claims for breach of contract, fraud, unfair trade practices, defamation, and

malicious prosecution by Defendants. GAI also seeks declaratory and preliminary and

permanent injunctive relief. For the reasons which follow, Defendants' Rule 12(b)(6)

Motion to Dismiss is **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

GAI initiated the present action on July 19, 2014. See Record Document 1. In its

Complaint, GAI named the City, the City Council Defendants, who were members of the

Shreveport City Council at the time the alleged actions took place, and the City Attorney

Defendants, who were the City Attorney and the Assistant City Attorney for the City. See

id. at 4, ¶¶ 5-10. The Defendants argue that the claims lodged against them by GAI are

prescribed on the face of the complaint, others are barred by absolute and qualified

immunity, and the balance state no cognizable claim against any of the Defendants. <u>See</u> Record Document 55-1 at 7.

The present action involves a contract entered into between GAI and the City and certain decisions made and resolutions enacted by the Shreveport City Council, specifically, the City Council Defendants. In December 2007, GAI contracted with the City to provide financial advisory services relating primarily to the restructuring of the City's multiple interest rate swaps and adjustable rate bonds, which had potential losses to the City's general fund of over $100 million. <u>See</u> Record Document 1 at ¶¶ 11-12. As a result of entering into the contract with GAI, GAI saved the City $159 million over a four-year period. <u>See id.</u> at ¶ 13.  After achieving such success, the City tasked GAI with developing a financial plan to secure new money for citywide capital improvements. <u>See id.</u> at ¶15. In order to finance such improvements, it was necessary to issue bonds backed by property or ad valorem taxes, which required voter approval. <u>See id.</u> at ¶17. On December 14, 2010, the City Council unanimously approved Resolution 277 (the financial plan with revisions) that was now subject to the State Bond Commission approval and voter approval. <u>See id.</u> at ¶ 22. The State Bond Commission and voters approved the three propositions contained in Resolution 277.  <u>See id.</u> at ¶¶ 23-24.

On July 12, 2011, the City received a low bid of 3.9% interest, which was the lowest interest rate of any long term bond issue. <u>See id.</u> at ¶ 27. In response, the City Council passed Resolution 69 approving the sale of bonds to the low bidder and designated the executive office (the Mayor) to pay fees/expenses. <u>See id.</u> at ¶¶ 28 and 31. Pursuant to this delegation and authorization by the City Council, in the form approved by the City Attorney Defendants, the Mayor informed the Bond Trustee to pay GAI $166,887.67 in

fees and expenses. See id. at ¶ 33. Furthermore, the City Attorney Defendants attested to the fact that the executive office had the power to pay such fees when it issued an opinion concluding such. See id. at ¶ 36. However, allegedly at the request of the City Council Defendants, the City Attorney Defendants later reversed their legal position on this matter in order to appease the City Council Defendants. See id. at ¶¶ 39 and 62-64.

Shortly after issuing the bonds, the City Council Defendants required the City's internal auditor to investigate GAI. See id. at ¶ 37. After reviewing the work performance, invoices, and billing of GAI, the audit revealed the work was done in accordance with the contract. See id. at ¶ 38. However, allegedly dissatisfied with the internal auditor's report, the City Council Defendants passed a resolution in order to secure an outside firm to investigate GAI. See id. at ¶ 42. The law office of Laborde & Neuner was retained by the City Council. Laborde & Neuner, among other things, was tasked with investigating matters relating to the City's contract with GAI and audit all payments made to GAI under the current contract. See Record Document 55-4 at 1. In order to assist with the investigation, Laborde & Neuner worked in close consultation with Postlewhite & Netterville, an accounting firm, who conducted an in-depth review of payments made under the contract. See Record Document 55-4 at 1. Following review of GAI's responses to the questions posed by the investigative team, the team published a report ("Neuner Report") stating that there was $677,333 of questionable expenses. Id. at ¶¶ 43-44. Furthermore, the Neuner Report concluded, among other things, that "1) [GAI] failed to maintain and provide adequate documentation of its services to justify payment by the City, 2) [GAI] billed for services that may not have been compliant with the Contract, and 3) some payments to [GAI] were not properly approved." Record Document 55-4 at 2.

GAI alleges that the Neuner Report was "maliciously misrepresented" by the City Council Defendants and others in the local media as an "audit" which discovered wrongdoing by GAI in order to cast GAI in a false light and undermine its business. See id. at ¶¶ 45-46. Furthermore, GAI alleges that the Neuner Report was materially inaccurate, and a false and misleading reading of the contract terms and provisions. See id. at ¶ 55-56. The finding in the Neuner Report concerning the questionable fees/expenses was rebutted by GAI when it filed an administration response clarifying that it had performed its duties properly and that there were no contractual violations with the City Council. See id. at ¶¶ 47-49. The executive branch also prepared a response that was filed with the City Council stating that the so called "questionable expenses" were contrived and found that the City owed GAI for the billed work. Id. at ¶ 57.

However, the responses to the Neuner Report were allegedly never acknowledged by the City Council Defendants or by a formal resolution terminating the "investigation," which according to GAI, evidenced that the Neuner Report was simply a "hit piece." Id. at ¶ 50. GAI alleges that the Defendants' motive behind the investigation was to conjure up evidence to fire GAI without cause because GAI was an African-American financial advisory firm. See id. at ¶ 52. Furthermore, the City Council Defendants also allegedly wanted to choose the financial advisor to be used by the Mayor, which purportedly violated the City Charter. See id. However, the contract executed between the City and GAI provided that "[t]he city has and reserves the right to suspend, terminate or abandon the execution of any work by [GAI] without cause at any time upon giving to [GAI] written notice." Record Document 55-2 at 4. Moreover, the contract stated that if the City decided

to terminate the contract with GAI without cause, GAI would be entitled to payment only for work completed through the date of termination. Id.

In June of 2013, the City Council passed several ordinances amending the 2013 budgets for various city funds that prohibited payments for financial advisory services, unless a contract with the person or entity providing such services was approved by the City Council prior to the services being provided. See id. at ¶¶ 58 and 71. GAI alleges the amendments to the ordinances were racially motivated. The City subsequently sued GAI in the First Judicial District Court of Caddo Parish, Louisiana, in February 2014 to recover $53,450.17 due to overpayment for the GAI's services. GAI alleges that the filing of this suit by the City Attorney Defendants allowed the Defendants to constructively terminate the contract, which was allegedly always the City Council Defendants' goal. By filing suit against GAI, the City was now able to dispose of GAI as its financial advisor due to a litigation conflict. See id. at ¶ 70. That state court suit remains pending.

## LAW AND ANALYSIS

### I.   Pleading Standards and the Rule 12(b)(6) Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny. Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555-56, 127 S. Ct. at 1965. If a pleading only contains

"labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. Courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. However, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted). Moreover, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Id. at 975, (quoting Fernandez–Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir.1993)). Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 678-79, 129 S. Ct. at 1949, see also Twombly, 550 U.S. at 555, 127 S. Ct. at 1965. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558, 127 S. Ct. at 1966.

In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos Cty., Tex., 981 F.2d 237, 243 (5th Cir. 1993). However, a court may also rely upon "documents incorporated into the complaint by reference and

matters of which a court may take judicial notice" in deciding a motion to dismiss. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008); see Fed. R. Evid. 201. GAI argues that that the contract, internal audit report, Neuner Report, the city ordinances, resolution 120 of 2013, and the state court petition cannot be reviewed by the Court in deciding this present Motion to Dismiss because they were not attached to GAI's Complaint. However, the Fifth Circuit has noted approvingly that various other circuits have allowed "[d]ocuments that a defendant attaches to a motion to dismiss to be considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (citing Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993)). GAI's Complaint contains numerous references to the documents attached to the Defendants' Motion to Dismiss. Furthermore, the Court finds those documents central to GAI's complaint because GAI relies on those documents to state claims for breach of contract, fraud, unfair trade practices, defamation, malicious prosecution, declaratory and preliminary and permanent injunctive relief, and discrimination based on race under 42 U.S.C. §§ 1981, 1983, and 1985. Clearly, those documents attached to the present Motion to Dismiss are central to GAI's claims; otherwise, GAI would not have referenced those documents in its Complaint with such abundance.

Moreover, GAI in its Opposition to the Defendants' Motion to Dismiss argues the wrong legal standard for Rule 12(b)(6) motions. See Record Document 59 at 8. The standard GAI relies on was set forth in Conley v. Gibson, where the Supreme Court held that a district court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." 355 U.S. 41, 45, 78 S. Ct. 99, 102 (1957). GAI cited to a Fifth Circuit case, Lowrey v. Texas A & M Univ. Sys., 117 F.3d 242, 247, that relied on the Supreme Court's decision in Conley. However, the Conley decision was abrogated by the Supreme Court in Twombly. See 550 U.S. at 563, 127 S. Ct. at 1969. Accordingly, as indicated supra, the correct standard is a plausibility standard set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny.

## II.    Federal Law Claims

In the present action, GAI alleges that the Defendants violated the equal protection clause of the Fourteenth Amendment in passing legislation that would prohibit GAI, an African-American financial advisory firm, from continuing its contractual obligation with the City. See Record Document 1 at 41. GAI argues that the Defendants should be held liable under 42 U.S.C. §§ 1981, 1983, and 1985. See id. However, there is a disagreement between the parties over which statute of limitations (Louisiana prescriptive period) applies to the federal law claims that the Court will address first.

### A.    Statute of Limitations/Prescriptive Period

"The statute of limitations for a suit brought under 42 U.S.C. §§ 1981, 1983, and 1985 is determined by the general statute of limitations governing personal injuries in the forum state." Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir. 2001); see Johnson v. Crown Enters., Inc., 398 F.3d 339, 341 (5th Cir. 2005) (noting that courts traditionally apply a state's personal injury limitations period in a § 1981 action); see Helton v. Clements, 832 F.2d 332, 334 (5th Cir. 1987) (noting that a state law limitations period applies to a § 1985 claim). The forum state is Louisiana; thus, Louisiana law will govern. In Louisiana, a lawsuit for personal injury (delictual action) is subject to a one-

year liberative prescription period, following the accident. <u>Palmer v. Hamp's Constr., L.L.C.</u>, 2016-0381 (La. App. 4 Cir. 11/30/16), 204 So. 3d 1124, 1133; <u>see</u> La. Civ. Code art. 3492. Therefore, according to Defendants, a one-year statute of limitations applies to GAI's Section 1981, 1983, and 1985 claims. However, GAI argues that a four-year statute of limitations should apply pursuant to 28 U.S.C. § 1658(a). Title 28, United States Code, Section 1658(a) states, "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." This four-year "catchall" statute of limitations applies to actions arising under federal statutes enacted after December 1, 1990, the date of the enactment of that law. <u>Mitchell v. Crescent River Port Pilots Ass'n</u>, 265 F. App'x 363, 367 (5th Cir. 2008). In the present action, like the plaintiff in <u>Mitchell</u>, GAI argues that its Section 1981 cause of action should have a four-year statute of limitations pursuant to this standard. However, unlike <u>Mitchell</u>, this case involves post-formation conduct rather than pre-formation conduct. In <u>Patterson v. McLean Credit Union</u>, the Supreme Court held that Section 1981 did not protect post-formation conduct, which prompted Congress to amend Section 1981. 491 U.S. 164, 177, 109 S. Ct. 2363, 2363 (1989). Accordingly, GAI's claim under Section 1981 would only have been actionable after the enactment of the 1990 federal four-year "catchall" statute of limitations. Therefore, the four-year "catchall" statute of limitations applies rather than the one-year statute of limitations, which makes GAI's federal claims ripe for review.

**B.    Claims Pursuant to 42 U.S.C. §§ 1981, 1983, and 1985**

The purpose behind 42 U.S.C. § 1981 was to ban discrimination in the making or enforcement of contracts against, or in favor of, any race. <u>See</u> <u>Gratz v. Bollinger</u>, 539 U.S.

244, 275, 123 S. Ct. 2411, 2430 (2003). Purposeful discrimination that violates the equal protection clause of the Fourteenth Amendment will also violate Section 1981. See id. at 275, 123 S. Ct. at 2430. "To establish a claim under Section 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." Green v. State Bar of Texas, 27 F.3d 1083, 1086 (5th Cir. 1994).

"Section 1983 affords a private cause of action to any party deprived of a constitutional right under color of state law." Texas Manufactured Hous. Ass'n, Inc. v. City of Nederland, 101 F.3d 1095, 1106 (5th Cir. 1996); see 42 U.S.C. § 1983. In the present action, GAI is alleging that the ordinances (state/municipal law) passed by the City Council Defendants deprived GAI of its constitutional right of equal protection under the Fourteenth Amendment. Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994) (citation omitted). Therefore, "in order to adequately state a claim under Section 1983 against individual defendants, plaintiff must support her claim with specific facts demonstrating a constitutional deprivation and may not rely on conclusory allegations." Washington v. Louisiana, No. CIV.A. 11-334-BAJ, 2012 WL 4159079, at *7 (M.D. La. Aug. 21, 2012), report and recommendation adopted, No. CIV.A. 11-334-BAJ, 2012 WL 4120441 (M.D. La. Sept. 18, 2012), aff'd, 628 F. App'x 914 (5th Cir. 2015).

"Section 1985(3) was enacted to protect the civil rights of individuals from 'class-based, invidiously discriminatory animus behind the conspirators' action.'" Liberty Cty.

Officers Ass'n v. Stewart, 903 F. Supp. 1046, 1056 (E.D. Tex. 1995) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798 (1971)). In order to state a claim for conspiracy pursuant to 42 U.S.C. § 1985(3), a plaintiff must prove: "(1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." Angel v. La Joya Indep. Sch. Dist., No. 15-41099, 2017 WL 5900026, at *4 (5th Cir. Nov. 29, 2017).

Accordingly, 42 U.S.C. § 1983 affords citizens the vehicle to pursue a private cause of action against state actors, in this case the City Council and City Attorney Defendants, for constitutional violations. In the present action, Defendants have invoked the defenses of absolute and qualified immunity. The City Council Defendants have invoked absolute legislative immunity and qualified immunity and the City Attorney Defendants have invoked the defense of qualified immunity. These defenses will be discussed infra.

### i. Absolute Legislative Immunity

Local legislators enjoy absolute immunity from suits lodged against them by plaintiffs seeking damages under 42 U.S.C. § 1983 as a result of their legislative activities. Bogan v. Scott-Harris, 523 U.S. 44, 49, 118 S. Ct. 966, 970 (1998) ("[W]e now hold that local legislators are likewise absolutely immune from suit under § 1983 for their legislative activities."). In Bogan, the plaintiff brought suit under 42 U.S.C. § 1983 against the mayor and the city council vice-president ("vice-president") alleging that the vice-president, the mayor, and several other city officials eliminated the department the plaintiff led due to

racial animus and in retaliation for the plaintiff exercising her First Amendment rights. See id. at 47, 118 S. Ct. at 969. The district court denied the mayor and vice-president's claim of absolute legislative immunity reasoning that the ordinance passed was an individually-targeted administrative act rather than a neutral, legislative elimination of a position which incidentally resulted in the termination of the plaintiff. See id. at 48, 118 S. Ct. at 969. The First Circuit recognized that the mayor and vice-president were absolutely immune from civil liability arising from damages of their performance of legitimate legislative duties, but held that the challenged conduct was not legislative. See id. However, the Supreme Court determined that the mayor and the vice-president's actions were legislative because voting on the ordinance by the vice-president was quintessentially legislative and the mayor signing the ordinance into law was legislative as well. See id. at 55, 118 S. Ct. at 973. Furthermore, the Supreme Court, based on past precedent, held that the motives of legislators cannot be taken into consideration when analyzing absolute legislative immunity. See id.; see Tenney v. Brandhove, 341 U.S. 367, 377, 71 S. Ct. 783, 788 (1951) ("[I]t simply is 'not consonant with our scheme of government for a court to inquire into the motives of legislators.'") (citation omitted). Accordingly, absolute legislative immunity applies to all legislative actions regardless of motive and the inquiry to determine a Rule 12(b)(6) motion to dismiss is whether the action was legislative in nature. See id.

The City Council Defendants are entitled to absolute legislative immunity based on their actions in enacting ordinances that allegedly negatively impacted GAI's contract with the City. As the Supreme Court found in Bogan, absolute legislative immunity applies regardless of motive. See 523 U.S. 44, 55, 118 S. Ct. 966, 973 (1998). In the present action, GAI alleges that race factored into the City Council Defendants passing of the

ordinances. However, even if the Court assumes for the limited purpose of this ruling that race factored into the decision (the Court finds GAI has failed to show racial animus), motive should not be considered by the Court. Rather, the question is whether the action was legislative in nature. Clearly, the City Council Defendants voting on city ordinances is legislative in nature. Accordingly, the City Council Defendants are entitled to absolute legislative immunity and the claims brought against them under 42 U.S.C. §§ 1981, 1983, and 1985 are **DISMISSED**.

### ii. Qualified Immunity

The defense of qualified immunity is available to public officials for claims under 42 U.S.C. §§ 1981, 1983, and 1985. See Foley v. Univ. of Houston Sys., 355 F.3d 333, 338 (5th Cir. 2003); see also McKee v. Lang, 393 F. App'x 235, 238 (5th Cir. 2010). "The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation." Ashcroft v. Iqbal, 556 U.S. 662, 685, 129 S. Ct. 1937, 1953 (2009) (internal quotations and citations omitted). In fact, a qualified immunity defense is truly "an immunity from suit rather than a mere defense to liability." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009). Because of the important public policy behind the qualified immunity doctrine, a higher pleading standard applies in evaluating a plaintiff's complaint against a public official in his individual capacity once the official has raised a qualified immunity defense. See Schultea v. Wood, 47 F.3d 1427, 1433-34 (5th Cir. 1995) (*en banc*).

Once the defendant raises a qualified immunity defense, the plaintiff carries the burden of demonstrating the inapplicability of qualified immunity. See Club Retro LLC v. Hilton, 568 F.3d 181, 194 (5th Cir. 2009). First, the court must determine whether the

plaintiff alleged sufficient facts to make out a violation of a constitutional right. See Pearson, 555 U.S. at 232, 129 S. Ct. at 816. Second, the court must determine whether the constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct. Id. at 232, 129 S. Ct. at 816. A defendant who can validly raise a qualified immunity defense will enjoy its protection so long as the allegedly violated constitutional right was not clearly established at the time of the violation. See id. The qualified immunity inquiry turns on "the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken". Id. at 244, 129 S. Ct. at 822.

The City Attorney Defendants as well as the City Council Defendants[1] are entitled to qualified immunity. As illustrated supra, GAI attempts to hold the City Council Defendants liable for their actions in passing the contested ordinances. As it concerns the City Attorney Defendants, GAI attempts to hold the City Attorney Defendants liable under 42 U.S.C. §§ 1981, 1983, and 1985 for issuing a legal opinion on August 2, 2011 that allegedly misrepresented to GAI and the Bond Trustee that the fees paid were legal, valid, correct and binding under the financial advisory contract, which GAI relied on. See Record Document 59 at 19-20. According to GAI, this legal opinion was a misrepresentation because this opinion was altered due to alleged pressure by City Council Defendants to file the state court lawsuit in February 2014 seeking recoupment of the fees paid to GAI. See id. at 20. The City Attorney Defendants along with the City Council Defendants asserted the defense of qualified immunity for their actions in relation to the contract with

---

[1] The Court has dismissed the federal law claims lodged against the City Council Defendants on the basis of absolute legislative immunity. However, in the alternative, the Court finds the City Council Defendants are entitled to qualified immunity.

GAI. See Record Document 55-1 at 11. However, GAI has failed to demonstrate the inapplicability of the qualified immunity defense as required by this jurisdiction. See Club Retro LLC v. Hilton, 568 F.3d 181, 194 (5th Cir. 2009) (Once the defendant raises a qualified immunity defense, the plaintiff carries the burden of demonstrating the inapplicability of qualified immunity.). GAI has merely asserted conclusory arguments in its Opposition to the Motion to Dismiss. For example, GAI states that "[p]laintiff has alleged a clear violation against established statutory and constitutional rights which bars qualified immunity in this case." Record Document 59 at 24. Thus, the Court finds that GAI has failed to meet its burden of showing the inapplicability of qualified immunity. Accordingly, the Court finds that the City Attorney Defendants as well as the City Council Defendants are entitled to qualified immunity based on GAI failing to meet its burden. Consequently, all federal claims against the City Attorney Defendants and City Council Defendants should be **DISMISSED**.

However, assuming *arguendo* that GAI has met its burden of demonstrating the inapplicability of qualified immunity, the Court must undertake a two prong test to determine whether the City Attorney Defendants and the City Council Defendants are entitled to qualified immunity. First, the court must determine whether the plaintiff alleged sufficient facts to make out a violation of a constitutional right. See Pearson, 555 U.S. at 232, 129 S. Ct. at 816. Second, the court must determine whether the constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct. Id. at 232, 129 S. Ct. at 816. GAI is alleging a violation of the equal protection clause of the Fourteenth Amendment. However, GAI has failed to plead sufficient facts, taken as true, that would allow the Court to conclude that the City Attorney Defendants or the City

Council Defendants violated GAI's Fourteenth Amendment right. GAI's Complaint details the relationships of the parties involved and the actions that transpired as a result of such relationships; nonetheless, GAI has only offered conclusory allegations as to how the City Council Defendants and City Attorney Defendants violated its Fourteenth Amendment right. Furthermore, even if the Court were to find that the City Attorney Defendants violated a clearly established constitutional right, the Court finds that the action taken by the City Attorney Defendants in altering a prior legal opinion to be objectively reasonable. See Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010)([w]hether an official's conduct was objectively reasonable is a question of law for the court). Moreover, the Court finds that the actions taken by the City Council Defendants in passing city ordinances to be objectively reasonable as they were looking out for the City's best interest, i.e., saving the City money. Therefore, as alluded to supra, the City Council Defendants and City Attorney Defendants are entitled to qualified immunity based on their actions. Accordingly, all federal claims levied against them should be **DISMISSED**.

III. **Louisiana Law Claims**

In the present action, there is a dispute between GAI and the Defendants as to whether some of GAI's state law claims have prescribed. GAI argues that the continuing tort theory applies. The Defendants argue that GAI's claims for fraud, unfair trade practices, defamation, and malicious prosecution have prescribed. The Court will first address whether these claims have prescribed.

A. **Prescription**

The Defendants argue that all of GAI's non-contractual claims such as fraud, unfair trade practices, defamation, and malicious prosecution are subject to a one-year

prescriptive period. In Louisiana, tort/delictual actions are subject to a liberative prescription of one-year. <u>See</u> La. Civ. Code art. 3492. A claim brought under the Louisiana Unfair Trade Practices Act ("LUTPA") is subject to a liberative prescription of one-year. <u>See</u> La. Rev. Stat. 51:1409. The prescriptive period for a breach of contract claim is ten-years. <u>See</u> <u>We Sell Used Cars, Inc. v. United Nat. Ins. Co.</u>, 30-671 (La. App. 2 Cir. 6/24/98), 715 So.2d 656, 658, <u>see</u> La. Civ. Code art. 3499. The Defendants do not argue that GAI's breach of contract claim has prescribed. However, the Defendants assert that GAI's actions for fraud, unfair trade practices, defamation, and malicious prosecution have prescribed. <u>See</u> Record Document 55-1 at 9. Nonetheless, GAI argues that the continuing tort doctrine applies and prescription did not begin to run until February of 2014, the day the City initiated the state court lawsuit. <u>See</u> Record Document 59 at 18. "A continuing tort is occasioned by continual unlawful acts and for there to be a continuing tort there must be a continuing duty owed to the plaintiff and a continuing breach of that duty by the defendant." <u>Crump v. Sabine River Auth.</u>, 98-2326 (La. 6/29/99), 737 So.2d 720, 728. Moreover, the damages sustained by a party alleging a continuing tort must be continuous. <u>See id.</u> at 726.

In the present action, GAI has failed to plead facts that show a continuous, unlawful act committed by the Defendants. As mentioned <u>supra</u> and will be discussed in more depth <u>infra</u>, the Court finds that the Defendants actions were lawful. Moreover, GAI has failed to allege in its Complaint that GAI has suffered continuous damage based on the separate actions of the Defendants. GAI filed its complaint with this Court on July 19, 2014. <u>See</u> Record Document 1. The actions GAI complains of occurred at the latest on July 9, 2013. <u>See</u> Record Document 55-1 at 9-10. Accordingly, a one-year prescriptive

period applies to GAI's claims for fraud, LUTPA, defamation, and malicious prosecution. Therefore, the Court finds those claims have prescribed because they occurred more than one year after filing of the present lawsuit and the continuing tort theory does not apply.

### B. Breach of Contract

The elements that must be proven in order for a plaintiff to recover for breach of contract are: "(1) the obligor's undertaking an obligation to perform; (2) the obligor failed to perform the obligation (the breach); and (3) the failure to perform resulted in damages to the obligee." <u>Denham Homes, L.L.C. v. Teche Fed. Bank</u>, 2014-1576 (La. App. 1 Cir. 9/18/15), 182 So.3d 108, 119; <u>see</u> La. Civ. Code art. 1994. GAI alleges that the Defendants collectively caused the City to breach the financial advisory contract when the City Attorney Defendants filed suit in state court to recoup funds voluntarily paid to GAI. <u>See</u> Record Document 1 at 17. GAI argues that the decision on whether to direct the City Attorney Defendants to initiate a lawsuit lies with the Mayor rather than the City Council Defendants. Thus, in directing the City Attorney Defendants to file suit against GAI, the City Council Defendants allegedly usurped the Mayor's executive power. <u>See id.</u> at 21. Furthermore, GAI alleges that the passing of the ordinances and initiation of the state court lawsuit was motivated by a racial animus against GAI, an African-American financial advisory firm, by the City Council Defendants. <u>See id.</u> at 19. However, the Defendants argue that the contract provided that they could terminate the contract at any time without cause. <u>See</u> Record Document 15. Nonetheless, GAI argues that consideration of the contract at the Motion to Dismiss stage would be improper and would convert the present Rule 12(b)(6) Motion into a Motion for Summary Judgment. <u>See</u> <u>Colle</u>

v. Brazos Cty., Tex., 981 F.2d 237, 243 (5th Cir. 1993) (At the Motion to Dismiss stage, a court generally "may not go outside the pleadings."). However, a court may also rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice" in deciding a motion to dismiss. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008); see Fed. R. Evid. 201. In the present action, GAI's complaint makes numerous references to the contract entered into with the City. In fact, the majority of GAI's claims revolve around the financial advisory contract. Accordingly, the Court will consider the contract, attached to the Defendants' Motion to Dismiss, appropriate at this stage in the litigation.

GAI has failed to plead facts to show that the Defendants breached the contract with GAI. First, the individual defendants are not parties to the contract and cannot be held personally liable for its breach. Cf. Dennis v. Copelin, 94-2002 (La. App. 4 Cir. 2/1/96, 9), 669 So.2d 556, 561, writ denied, 96-1012 (La. 6/21/96), 675 So.2d 1079 ("One who is not a party to a contract has no claim for the breach of it, as that right belongs to the obligee."). Moreover, the filing of the lawsuit in state court to recover overpayment did not result in a breach of the financial advisory contract. Lastly, the contract expressly provides that the City can terminate the contract at any time without cause. Therefore, the City had the right to terminate the contract with GAI at any time as long as the City provided GAI with written notice, which occurred once the City initiated the state court lawsuit. Consequently, GAI has failed to state a claim for breach of contract because they have failed to plead facts that establish a breach on the part of the Defendants. Accordingly, the breach of contract claim should be **DISMISSED**.

## C.  Fraud

Assuming *arguendo* that GAI's fraud claim has not prescribed, the Court finds that GAI has failed to state a claim for which relief can be granted. In Louisiana, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other . . . ." Norwood v. Mobley Valve Servs., Inc., 49-064 (La. App. 2 Cir. 6/25/14), 144 So.3d 1143, 1150, writ granted in part, 2014-1882 (La. 1/16/15); La. Civ. Code art. 1953. In order to succeed on a fraud claim, a plaintiff must prove the following elements:  "(1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract." Williams v. Interstate Dodge Inc., 45-159 (La. App. 2 Cir. 4/14/10), 34 So.3d 1151, 1155–56.

GAI seeks recovery against the City Attorney Defendants for fraud due to their actions in drafting the alleged contradictory legal opinion. GAI argues that the first legal opinion drafted by the City Attorney Defendants authorized the payment of fees to GAI and that the second legal opinion drafted by the City Attorney Defendants found that the payment of fees to GAI were in violation of the Mayor's authority. See Record Document 1 at 25. However, GAI's Complaint is remiss with allegations that the City Attorney Defendants misrepresented or suppressed any fact. Rather, the Complaint contains conclusory allegations and threadbare recitals of the elements of fraud such as: "Defendants knew that Plaintiff would, and plaintiff did, rely thereon in accepting final payment for its services as being a legally authorized act of the City of Shreveport." See

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted) (If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2).). GAI has failed to allege facts that would show that the legal opinion was misrepresented or suppressed in order to obtain an unjust advantage or cause damage, and that the error was induced by a fraudulent act relating to a circumstance substantially influencing GAI's consent to enter into the contract. <u>See</u> <u>Campbell v. City of San Antonio</u>, 43 F.3d 973, 975 (5th Cir. 1995) ("The complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."). Accordingly, GAI's claim against the City Attorney Defendants for fraud is **DISMISSED**.

### D.    Louisiana Unfair Trade Practices Act

Assuming *arguendo* that GAI's LUTPA claim has not prescribed, the Court finds that GAI has failed to state a claim for which relief can be granted. There is not a specific list or definition of the act that constitutes unfair or deceptive trade practices, rather, the acts "are determined on a case-by-case." <u>Volentine v. Raeford Farms of Louisiana, LLC</u>, 50-698 (La. App. 2 Cir. 8/15/16), 201 So.3d 325, 353, <u>writ denied,</u> 2016-1924 (La. 12/16/16), 212 So.3d 1171, and <u>writ denied,</u> 2016-1925 (La. 12/16/16), 212 So.3d 1171. "Only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA." <u>Id.</u> at 353. Furthermore, "LUTPA does not provide an alternate remedy for simple breaches of contract" and there is a substantial difference between a breach of contract claim and the egregious behavior the LUTPA statute prohibits. <u>Id.</u> In the present action, GAI has failed to allege facts that

would constitute fraud, misrepresentation or unethical conduct by the Defendants; rather, GAI has alleged mere conclusory allegations couched as factual allegations that the Defendants took part in some elaborate scheme to defraud GAI. Furthermore, courts across Louisiana have not found LUTPA to be applicable to a municipality or members of a governing body under circumstances like those alleged by GAI and this Court declines to be the first Court to recognize such. Lastly, the Court dismissed GAI's claim for breach of contract <u>supra</u> and case law within Louisiana notes that "LUTPA does not provide an alternative remedy for simple breaches of contract." <u>See</u> <u>Volentine</u>, 201 So.3d at 353. Accordingly, GAI's claim for damages based on LUTPA is **DISMISSED**.

### E.    Defamation

Assuming *arguendo* that GAI's defamation claim has not prescribed, the Court finds that GAI has failed to state a claim for which relief can be granted. In Louisiana, four elements are necessary to succeed in a defamation action:  "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." <u>Kennedy v. Sheriff of E. Baton Rouge</u>, 2005-1418 (La. 7/10/06), 935 So.2d 669, 674. Privilege is a defense to a defamation action. <u>Martin v. State, Dep't of Pub. Safety & Corr., Office of State Police</u>, 47-647 (La. App. 2 Cir. 1/16/13), 109 So.3d 442, 448. An absolute privilege is available to judges and legislators concerning statements made while in the course of their official duties. La. Rev. Stat. § 14:50; <u>see also</u> <u>Martin</u>, 109 So.3d 448. "A conditional or qualified privilege arises in situations in which the person's interest is regarded as sufficiently important to justify some latitude for making mistakes so that publication of the defamatory statement is conditionally privileged." <u>Martin</u> 109 So.3d at 448.

In the present action, GAI alleges the Defendants "did write or have written, sign[ed], circulated, and cause to be circulated, and did utter and publish, a resolution and public statements to the media and to the public" that GAI allegedly committed errors as it concerned the financial advisory contract with the City. Record Document 1 at 31. Furthermore, GAI argues that the statements allegedly pled by the City Attorney Defendants in the state court lawsuit were defamatory statements. See id. However, the only factual allegation pled against the City Council Defendants concern the ordinances passed. GAI has failed to plead facts showing that the City Council Defendants made false or defamatory statements to a third party. Accordingly, the City Council Defendants are entitled to the absolute legislative privilege because the ordinances passed were clearly made within the course and scope of their duties as city councilmen and any statements made during those proceedings are protected. Therefore, the defamation claim against the City Council Defendants is **DISMISSED**.

As to the City Attorney Defendants, the statement that "[t]he City overpaid Grigsby under the Contract in connection with the Erroneous Invoice in the amount of FIFTY THREE THOUSAND FOUR HUNDRED FIFTY AND 17/100 ($53,450.17) DOLLARS" does not subject the City Attorney Defendants to damages for defamation. Record Document 1 at 32. First, the City Attorney Defendants were not the publishers of the state court petition. Moreover, the allegations in GAI's Complaint concerning defamation are merely "conclusory allegations or legal conclusions masquerading as factual conclusions" that will not suffice to prevent the present Motion to Dismiss. See Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995). Thus, GAI has failed to state a claim for which relief can be granted as it relates to the defamation claim lodged against the City Attorney

Defendants. Accordingly, the defamation claim against the City Attorney Defendants is **DISMISSED**.

### F. Malicious Prosecution Claim

Assuming *arguendo* that GAI's malicious prosecution claim has not prescribed, the Court finds that GAI has failed to state a claim for which relief can be granted. GAI attempts to hold the Defendants liable for malicious prosecution pursuant to La. Civ. Code art. 2315. In order to successfully state a claim for malicious prosecution, a plaintiff must prove six elements:  "1) the commencement or continuance of an original criminal or civil judicial proceeding; 2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; 3) its bona fide termination in favor of the present plaintiff; 4) the absence of probable cause for such proceeding; 5) the presence of malice therein; and 6) damages conforming to legal standards resulting to plaintiff." LeBlanc v. Pynes, 46-393 (La. App. 2 Cir. 7/13/11), 69 So.3d 1273, 1279, writ denied, 2011-1792 (La. 10/14/11), 74 So.3d 213. In the present action, GAI's complaint does not allege a bona fide termination of the City's lawsuit. In fact, as a matter of public record, the suit remains pending. Accordingly, GAI has failed to state a claim for malicious prosecution. Consequently, GAI's claim for malicious prosecution is **DISMISSED**.

### G. Claims for Declaratory and Injunctive Relief

GAI's claim for declaratory and preliminary and permanent injunctive relief requests:  (1) a declaration that the "City Council's actions in filing a lawsuit to compel the reversal of the Mayor's decision to pay the financial advisor is an interference with the Mayor['s] powers as chief executive and administrator for the City, (2) and an injunction of that lawsuit, (3) a declaration that the Administration amendment to the budget

ordinances 47-52 violates U.S. Const. Amend XIV and La. Const. art. I, § 3 because the ordinances infringe on the fundamental right of African American financial advisors to receive equal treatment and hiring by the City, (4) a declaration that the ordinances are invalid, (5) and an injunction against those ordinances. Record Document 1 at 37-40.

The Anti-Injunction act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." Texas Employers' Ins. Ass'n v. Jackson, 862 F.2d 491, 499 (5th Cir. 1988). Moreover, "even orders such as declaratory judgments that are technically not injunctions may violate the Anti-Injunction Act if they have the effect of staying a pending state proceeding." McCorvey v. OCWEN Loan Servicing, LLC, No. CIV.A. 14-3186, 2015 WL 2359764, at *3 (W.D. La. Mar. 20, 2015) (citing Jackson, 862 F.2d at 506). As alluded to supra, GAI is seeking both a declaration by this Court that the Defendants actions in initiating the state court suit was improper and an injunction of that suit. However, the state court suit and this present action are factually similar in that that state court suit concerns the recoupment of an alleged overpayment and part of this suit concerns why that recoupment is misguided. Accordingly, the Court finds in the interest of justice that the state court suit proceed and GAI's claim for declaratory and injunctive relief as it concerns the state court suit be **DISMISSED**.

As to the third claim, requesting a declaration by this Court that ordinances 47, 48, 49, 50, and 52 of 2013 violate U.S. Const. Amend XIV and La. Const. art. I, § 3 because the ordinances infringe on the fundamental right of African American financial advisors to receive equal treatment and hiring by the City, the Court finds the relief sought by GAI to be improper. Furthermore, GAI requests the Court to declare the ordinances to be invalid and provide injunctive relief to GAI. Upon examination of the ordinances, which are public record and referenced throughout GAI's Complaint, the ordinances strictly restricted the Mayor's authority during the 2013 budget year to obtain and pay for financial advisory services for the City without regard to race. The Complaint fails to meet the plausibility standard in that GAI has failed to offer factual support that shows racial animus motivated the Defendants' decisions in passing the ordinances. Moreover, the Court ruling on the legality of the ordinances may potentially impact the state court proceeding. Accordingly, GAI's request that this Court declare the ordinances invalid is **DISMISSED**.

## CONCLUSION

The Defendants' Rule 12(b)(6) Motion to Dismiss (Record Document 55) is **GRANTED**. All claims brought against the Defendants are hereby **DISMISSED WITH PREJUDICE**.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this the 14th day of February, 2018.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT